[Civ. No. 12831.   First Dist., Div. One.   Oct. 31, 1945.]

ROY C. PULLEN, Respondent, v. HEYMAN BROTHERS (a Corporation) et al., Appellants.

M. Mitchell Bourquin for Appellants.

Vincent W. Hallinan and James Martin MacInnis for Respondent.

WARD, J.—This is an appeal by defendants from a judgment for plaintiff in an action for fraud. The amount of the verdict was fixed by the jury at $23,491.55, no exemplary damages being assessed.

The plaintiff's claim was based upon alleged fraudulent misrepresentations in relation to certain construction projects which the plaintiff and defendants had undertaken by reason of two agreements entered into in December of 1942, and certain other construction projects into which the profits of the original projects had been reinvested, which representations induced plaintiff to ratify such reinvestment and enter into a contract in July, 1943, relating to the latter construction projects. The plaintiff alleged that the defendant Alvin Hayman, the agent of Heyman Brothers, a corporation, and Heyman Brothers Construction Co., a copartnership, and of all other Heymans appearing as defendants and appellants, told him in the month of June, 1943, that all of the construction projects covered by the first agreement had been completed and had resulted in a large profit; that plaintiff's original investment and the profit had been reinvested in other projects which either had been completed

or had so far progressed toward completion as to insure a large profit, wherefore the plaintiff entered into the contract ratifying the reinvestment. With respect to these representations the answer affirmatively alleged that at the time of the July, 1943, agreement "plaintiff was informed and knew that the performance of said war contracts therein mentioned would result in a substantial loss, the exact amount whereof was not then definitely known," and "that on the 12th day of July, 1943, all of said contracts either had been completed or were so near completion as to insure a large loss to the defendants Heyman Brothers, a corporation, and Heyman Brothers Construction Co., a copartnership, and to the plaintiff if he were held as party to said agreement, but in that regard said answering defendants allege that the aggregate amount of such loss was not then ascertainable and could not be ascertained until all of said contracts were completed; admit that said projects and contracts resulted in a large loss to the defendants, Heyman Brothers, a corporation, and Heyman Brothers Construction Co., a copartnership, and to plaintiff as a party to said agreement; admit that the loss so incurred was such as to result in a loss of all the sums invested therein, including the moneys belonging to and so invested therein by plaintiff; admit that an inspection of said accounts would not have shown that all of said projects were highly successful financially or had made a large profit or that any of them then uncompleted had so far progressed as to be proof against any possible loss." An examination of these allegations reveals that the basic issues on the trial concerned (1) whether any false representations, known by Hayman to be false, concerning profits, were ever made by Hayman, and (2) assuming such representations were ever made, whether plaintiff was justified in relying on them. In support of the allegation of fraud plaintiff testified: "Q. [At the time of the consideration of the new contract] was anything said as to whether or not the projects were making money? A. Yes. Q. What did Mr. Hayman say on that subject? A. Mr. Hayman said, 'We were not making a lot of money, we were not getting rich, but we were doing all right.' He said that we were probably making, he judged, about $40,000." Plaintiff further testified that he had confidence in Hayman; that he believed his statements and, relying upon them, signed the July 12, 1943 contract. De-

fendants' evidence on the trial was sufficient, if believed, to establish that plaintiff personally knew that two of the construction contracts had been materially underbid; and that plaintiff did not rely on any statements made by Hayman in entering into the last agreement.

The first contention of defendants on appeal concerns the sufficiency of the evidence to support the allegations of fraud in the complaint. It must be concluded that there is evidence from which a reasonable inference might be drawn that defendants made a representation in regard to a material fact; that such representation was false, known to defendants to be false, and made upon a subject upon which the plaintiff was ignorant. There is also evidence from which the facts that defendants intended that plaintiff should act upon the misrepresentation and that plaintiff relied upon defendants' statements to his damage could be deduced. When the evidence is construed most favorably to the prevailing litigant, the plaintiff, it is sufficient to establish all of the essential requirements from an evidentiary standpoint of a cause of action based upon fraudulent representations. (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958].) There is no merit in the contention that the representations proved did not conform to the complaint. The general rule is that the fraudulent representations relied upon must be pleaded. (*Mayer* v. *Mayer*, 207 Cal. 685 [279 P. 783].) This does not mean that all of the allegations of the complaint must be proved. (*Thomas* v. *Hacker*, 179 Cal. 731 [178 P. 855]; *Neff* v. *Engler*, 205 Cal. 484 [271 P. 744]; *Klutts* v. *Rupley*, 58 Cal.App.2d 560 [137 P.2d 496].) In the absence of a demurrer, fraud may be alleged in substance and effect and the evidence must conform thereto, but the proof need not be a verbatim recitation of the allegations of the complaint. (*Hick* v. *Thomas*, 90 Cal. 289 [27 P. 208, 276]; *Peterson* v. *Wood*, 119 Cal.App. 731 [7 P.2d 359].) Here the substance and effect of the representations proved conformed to the allegations of the complaint.

Other deficiencies in proof are asserted by defendants. Defendants claim that statements of financial condition and statements of value are statements of opinion only. The determination that a statement is an expression of opinion or an affirmation of a fact ordinarily is a question to be decided by the jury, particularly if there is other evi-

dence showing that the party who makes the statement has made other false statements in reference to the subject matter or has performed or neglected without reasonable explanation to perform an act which indicates an intent to suppress vital information and thereby deceive some interested party. (*Willson* v. *Municipal Bond Co.*, 7 Cal.2d 144 [59 P.2d 974]; *Hobart* v. *Hobart Estate Co.*, *supra*.) The part of the answer and cross-complaint heretofore referred to admitted that a large loss would occur, but the amount was not ascertainable until all contracts should be completed. ■■ Whether plaintiff proceeded with reasonable expedition in the investigation of the affairs of the original and subsequent contracts is a question of fact for the jury to decide. The pleadings admit that an inspection of the books would not have shown whether the projects were financially properous or misadventures.

The main question on appeal concerns the propriety of certain instructions in view of the fact that basically the evidence in the case presents a test of credibility between plaintiff and defendant Alvin Hayman. As above noted the two basic conflicts related to whether any representations had been made, and whether, if any representations had been made, the plaintiff relied upon, or was justified in relying upon, them. Plaintiff knew that there had been underbids on several construction jobs within the July, 1943, agreement. Financial statements, except in general form, were unobtainable. There is evidence that when plaintiff sought information relative to the financial success or failure of the construction projects from the superintendent of construction defendant Alvin Hayman instructed the superintendent not to give the requested information.

In the Hobart case, *supra*, the court said (p. 447): "In passing upon the sufficiency of the evidence to support the verdict all conflicts must be resolved in favor of the implied findings of the jury, since it is the sole judge of the credibility of the witnesses and the weight of the evidence; but in determining whether a judgment must be reversed because of errors in instructions, we are required to examine the entire cause including the evidence and decide whether in our opinion the errors have resulted in a miscarriage of justice."

■■ Whether plaintiff in the present case relied on defendant Hayman's statements, in view of plaintiff's ad-

450

mitted knowledge that at least two of the construction projects had been underbid, presents a question to be decided solely by the jury. A verdict in favor of plaintiff or of defendants might be upheld, but the question of reliance is a vital legal requisite to the fraud charge herein. Under such circumstances the framing of the instructions becomes important as the wording may have caused the jury to reach a conclusion based on the contents of an instruction irrespective of other instructions which may state the law correctly.

The first instructions attacked are two instructions submitted by plaintiff, referred to as *formula* instructions. They are rather loosely and incompletely drawn. They are couched in permissive and not in directive form and certain language which is generally required in formula instructions is omitted. It must be noted that in one instruction the basic factor of reliance was omitted and in the other the factor of reasonable reliance was omitted. In *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165 [153 P.2d 338], after considering a *formula* instruction, the court says p. 170) : ''Accordingly, it has been held that although an instruction may not include all of the factors essential to a recovery by the plaintiff, its use does not constitute prejudicial error where, considered together in their entirety, the instructions fully and fairly charge the jury with the law applicable to the case.'' The two instructions, if not in fact, by implication cover the necessary elements of the cause of action here alleged. The form and substance should be condemned but in the present case, standing alone, they should not be used as a ground for reversal.

The objection to the next instruction is that the jury was permitted to ''presume'' proof, which is not in the evidence. The instruction reads: ''If false representations were in fact made to the plaintiff by the defendant Heyman, and those representations were of a nature calculated to induce the plaintiff to alter his position to his risk or injury, by entering into the contract of July 12, 1943, and that plaintiff did thereupon alter his position, to his loss, and entered into the said contract, a presumption arises that the false representations induced him to do so, and that he relied upon them in so changing his position and entering into said contract.'' The use of the word ''presumption'' instead of ''inference'' in instructions to juries, except when the pre-

sumption is a stautory and not a judicial presumption, often causes difficulty on appeal to the party proposing the instruction. The use of the words "presume" or "presumption" instead of "infer" or "inference" has been approved in a few cases, condemned in many, but generally forgiven. One of the most notable cases in which the perpetration of such error has been pardoned is *Mudrick* v. *Market Street Ry. Co.*, 11 Cal.2d 724 [81 P.2d 950, 118 A.L.R. 533]. The legal problem of determining error is distinct from the question of miscarriage of justice. The latter question of necessity must depend upon the particular facts of each case. In the present case the facts are so evenly balanced that a reversal is warranted on the "presumption" instruction. It appears from its repeated use that little or no heed is given by attorneys who prepare and present this or similar instructions, to the admonitions of the appellate courts. In support of the view here taken that the use of the word "presumption" on the facts of this case constituted prejudicial error, it should be noted that in another part of the instructions the jury was told that "A presumption is a deduction which the law expressly directs to be made from particular facts." It is to be noted again that the error relates to one of the most sharply disputed facts in this case—plaintiff's reliance on the representation. In view of all the circumstances, and the holding on the next instruction attacked, and in view of the holding in the Hobart case, *supra*, the use of the word "presumption" instead of "inference" is prejudicially erroneous as applied to the facts of this case.

At the request of plaintiff the court instructed the jury as follows: "You are instructed that, even if one acts under the honest impression that he is violating no obligation or invading no right, nevertheless he is guilty of fraud if, knowing the circumstances, he negligently, carelessly or with lack of foresight, makes representations the natural and necessary consequence of which will be to deceive another. In this connection, you are instructed that gross negligence alone upon the part of a person making a representation may furnish conclusive evidence of fraudulent intent even where there is no actual intent to deceive." The case cited to the trial judge as authority for the correctness of this instruction was *Rialto Construction Co.* v. *Reed*, 17 Cal.App. 29 [118 P. 473]. Even in that case such an instruction

as appears herein was not approved. Plaintiff also seeks to justify the instruction because it was copied from a legal treatise of the law. As a rule an excerpt from a law book or from a court opinion is intended to declare the law relative to the particular matters under discussion. The courts of this state have condemned the use of extracting excerpts and changing them into instructions. Relative to a similar instance it was said in *Hall* v. *San Francisco*, 188 Cal. 641, 643-644 [206 P. 459]: "The instruction is an illustration of the dangers of attempting to frame a charge to the jury upon isolated extracts from opinions of this court." (See, also, *Rosander* v. *Market Street Ry. Co.*, 89 Cal.App. 710 [265 P. 536]; *Long* v. *Barbieri*, 120 Cal.App. 207 [7 P.2d 1082].) The first error in this instruction is the use of the words "or with lack of foresight." Note that it appears as a disjunctive. There is no definition of that phrase given in other instructions and at no place called to attention on appeal is the wording limited to a failure to foresee future events which should *reasonably* have been foreseen. As it stands, it may indicate that unless the defendant has the sagacity or spiritual gift of prevision, in any statements he may make, even if he acts "under the honest impression that he is violating no obligation or invading no right," nevertheless, he is guilty of fraud.

The second objection to the instruction is that in lieu of an actual intent to deceive, the jury was told that gross negligence might furnish *conclusive* evidence of fraudulent intent. Evidence is not conclusive unless so declared by the code. (Code Civ. Proc., § 1978.) Conclusive evidence may not be contradicted. (Code Civ. Proc., § 1837.) There is no rule of law which declares that gross negligence conclusively constitutes a fraudulent intent in lieu of an actual intent to deceive. Recently the same word was used in an instruction in the Hobart case, *supra*. The Supreme Court held: "We find no California statute or decision which requires that knowledge of facts that would prevent reliance must be established by conclusive or unanswerable evidence, and the instructions that such evidence is necessary were erroneous." The court then listed cases using the word "conclusive," and said "Many other decisions, however, and in particular the more recent ones, have omitted the word 'conclusive,' employing instead such terms as 'clear and convincing,' 'satisfactory,' and 'unequivocal,' and

it must now be regarded as settled that, whatever the proof necessary, it need not be 'conclusive.' (See *Beeler* v. *American Trust Co.*, 24 Cal.2d 1, 7, 8, [147 P.2d 583]; *Stromerson* v. *Averill*, 22 Cal.2d 808, 815 [141 P.2d 732]; *Chard* v. *O'Connell*, 7 Cal.2d 663, 665-666 [62 P.2d 369]; *Carlson* v. *Robinson*, 7 Cal.2d 235, 236 [60 P.2d 426]; 12 Cal.Jur. 832; 17 Cal.Jur. 756-757; 25 Cal.Jur. 247-249; and cases cited therein.''

Even if that part of the instruction here under consideration containing the word ''conclusive'' had been correct, it was not necessary to give it in this case in view of Hayman's admission that at the time the contract was signed he knew there would be a loss. The issue before the jury on the evidence was, did Hayman make a deliberate misrepresentation or did he not? The entire instruction stating that ''lack of foresight'' could constitute fraud and that ''gross negligence'' might ''furnish conclusive evidence of fraudulent intent'' was calculated to place upon the defendants a greater duty of care in making representations and a greater burden of proof in rebutting evidence of negligent misrepresentations than that required by law.

Error was committed in the giving of the above instructions. Were such errors prejudicial? The answer to that question must depend upon the closeness of the case on its facts, the nature of the erroneous instructions, the nature of the other instructions given, and on other factors. This was a very close case on its facts, particularly on the issue of reliance. The nature of the erroneous instructions has already been discussed. After reading the entire record, including the entire charge to the jury, it is difficult to say whether the errors were prejudicial. Were the question one of first impression, it might well be held that the particular errors in this case were not prejudicial. The question is, however, not one of first impression. Substantially the same problem was presented in the Hobart case, *supra*. In that case the majority of this court was of the opinion that substantially similar errors in instructions were not prejudicial. (*Hobart* v. *Hobart Estate Co.*, (Cal.App.) 148 P.2d 41.) This holding was reversed by the Supreme Court. As an intermediate appellate court we are bound by the decision of the Supreme Court. The instant case appears to be much closer on its facts than the Hobart case. The

instructions as a whole in the Hobart case were much more favorable to the defendants than in the present case. If the erroneous instructions in the Hobart case were prejudicial, there is no escape from the conclusion that the erroneous instructions in the present case were also prejudicial.

In view of the reversal necessitated by this conclusion with respect to the points made by appellants on the erroneous nature of the instructions, it is unnecessary to determine the precise amount which the evidence would have warranted the jury to find due the plaintiff. It is sufficient to say that the complaint, so far as fraud is concerned, is based solely upon the July, 1943, contract and not the December, 1942, agreement. Twenty thousand dollars was put up by plaintiff in December, 1942; subsequently $150 as part of the salary for an "estimater." The two December agreements provided that the respective parties "shall share ratably the profits or losses attendant upon the execution of said contracts." The evidence relative to losses on the December, 1942, contracts at the date of the new agreement in July, 1943, stands without contradiction in the record even though there is also evidence that in March, 1943, the contracts were operating at a profit. Hence on the record before this court, the verdict is excessive. If the evidence remains the same upon the retrial, and the jury believes it, the verdict can be only the amount of plaintiff's original investment, less losses, plus any interest due thereon.

The judgment is reversed and remanded for a new trial in accordance with the foregoing expressed views.

Peters, P. J., and Schottky, J. pro tem., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 20, 1945. Carter, J., voted for a hearing.