Filed 11/27/13  Sterpka v. The Upper Deck CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| STEVEN STERPKA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>THE UPPER DECK COMPANY et al.,<br><br>Defendants and Respondents. | D060056<br><br><br>(Super. Ct. No. 37-2009-00100230-CU-BT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County,

Lisa A. Foster, Judge.  (Retired judge of the San Diego Sup. Ct.)  Affirmed.

Law Offices of Douglas Jaffe and Douglas Jaffe for Plaintiff and Appellant.

The Upper Deck Company and Brittany A. Hysni for Defendant and

Respondent The Upper Deck Company.

Attlesey | Storm, LLP, Keith A. Attlesey and Suzanne S. Storm for Defendant

and Respondent Collectors Universe, Inc.

Steven Sterpka appeals the summary judgment against him in his lawsuit

against The Upper Deck Company (Upper Deck) and Collectors Universe, Inc.

(Collectors). The action arises from a dispute concerning the authenticity of a Charles Lindbergh signature which Sterpka obtained when he purchased a case of trading cards from Upper Deck and Collectors authenticated the signature. Sterpka contends the trial court erred in granting summary judgment because there are triable issues of fact as to all causes of action. We disagree and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In early 2008, Sterpka read an article in Beckett Magazine that contained elements from an Upper Deck press release. That article was about ten rare cards that Upper Deck produced which included a signature from a notable personality with a strand of their hair. Exchange vouchers for these "Hair Cuts Signature" cards were randomly inserted into packs of Upper Deck's SP Legendary Cuts. In June 2008, after reading the article, Sterpka purchased a case of the SP Legendary Cuts for approximately $1,500 in hopes of obtaining one of the rare cards.

Sterpka's case included a card that instructed him to contact Upper Deck to get a Charles Lindbergh Hair Cuts Signature card. Sterpka contacted Upper Deck and obtained the Charles Lindbergh card. The back of the card stated, "Congratulations! You have received a trading card with an historical strand of Charles Lindbergh's hair, that includes an autograph of Charles Lindbergh. The memorabilia was certified to us as belonging to Charles Lindbergh. The cut autograph was independently authenticated by a third party authenticator. We hope you enjoy this piece of history, as we continue to keep you as close as you can get! Enjoy your memorabilia card!" According to Upper Deck, it obtained a letter of authenticity in May 2008 from

2

PSA/DNA Authentication Services (PSA/DNA), a division of Collectors, authenticating the signature on the Charles Lindbergh Hair Cuts Signature card. The letter stated it served as a "certificate of authenticity for a/an Charles A. Lindbergh signed index card, which [Collectors] thoroughly examined. [¶] Inscription reads 'Sept. 10, 1928'[.]"

Sterpka contacted Beckett to sell the Charles Lindbergh card through Beckett Select Auctions, a service that lists notable cards on eBay. As part of Beckett's procedure to list the card, Sterpka paid Beckett $200 to obtain a letter of authenticity from James Spence Authentication who opined that the signature was genuine. Sterpka valued the card at $10,000, and Beckett listed it for that price on eBay. Sterpka believed $10,000 was an appropriate value because an Abraham Lincoln Hair Cuts Signature card had recently sold for nearly $20,000.

After the card was listed on eBay, Daniel Clemons, an autograph authenticator and consultant to Charles Lindbergh's daughter, Reeve Lindbergh, contacted Sterpka and eBay and informed them that the sale of the Charles Lindbergh Hair Cuts Signature card would violate intellectual property rights because the signature was a forgery. eBay cancelled Sterpka's multiple attempts to list the card.

Sterpka sent the card to RR Auction (RR) to authenticate the signature. In July 2009, RR returned the card to Sterpka with a letter from PSA/DNA disputing the authenticity of the signature. PSA/DNA later revoked the opinion in that letter.

Sterpka sued Upper Deck and Collectors asserting claims against each for fraud, negligent misrepresentation, negligence, and violation of the Consumers Legal

3

Remedies Act (CLRA; Civ. Code, § 1750 et seq.). Upper Deck and Collectors moved for summary judgment or in the alternative summary adjudication, arguing that Sterpka could not establish at least one element of each cause of action. The trial court agreed and entered judgment in favor of Upper Deck and Collectors.

DISCUSSION

I. *General Legal Principles and Standard of Review*

Summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Where the defendant is the moving party, it must show that a cause of action has no merit by putting forth evidence to show that either one or more elements of the cause of action, even if separately pleaded, cannot be established, or that a complete defense exists thereto. (*Id.*, subd. (o).) If the defendant meets this burden, the burden shifts to the plaintiff to establish that a triable issue of material fact exists. (*Id.*, subd. (p)(2).) On appeal, we review de novo the trial court's decision to grant summary judgment. We independently determine whether the record supports the trial court's conclusion that the asserted claims fail as a matter of law, and we are not bound by the trial court's stated reasoning or rationales. (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951.)

II. *Fraud and Negligent Misrepresentation Causes of Action*

Sterpka argues the trial court erred in granting summary judgment because Upper Deck knew or should have known the signature on the Charles Lindbergh card was not authentic and unreasonably relied on Collectors's letter of authenticity. In

4

regard to Collectors, Sterpka argues Collectors committed fraud and negligent misrepresentation by improperly providing a letter of authenticity to Upper Deck, later finding the signature was not authentic, and failing to disclose to Sterpka that it had issued a letter of authenticity to Upper Deck regarding the same signature. As we shall explain, we reject Sterpka's arguments.

" 'The necessary elements of fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.' [Citations.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239, capitalization and fn. omitted.) "The tort of negligent misrepresentation does not require scienter or intent to defraud. [Citation.] It encompasses '[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true' [citation], and '[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true' . . . ." (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173–174.) In both causes of action, the plaintiff must prove actual reliance on the misrepresentation. (*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.) "[T]he truth or falsity of the representations must and can only be determined as of the time when they were relied and acted upon by the [plaintiff]." (*United States Nat'l Bank v. Stiller* (1931) 119 Cal.App. 442, 444.)

Here, Upper Deck submitted facts showing that before it put the Charles Lindbergh Hair Cuts Signature card in the marketplace and sent it to Sterpka,

5

Collectors authenticated the signature on it. Upper Deck believed Collectors was one of the largest authenticators in the trading card industry. This evidence negated the intent element of Sterpka's fraud cause of action and showed Upper Deck's reasonable reliance on the authenticity of the signature. Thus, the burden shifted to Sterpka to show a triable issue of fact. (*Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 59.)

Sterpka argues fraudulent intent and unreasonable reliance can be inferred because Upper Deck initially did not produce documents showing how it obtained the Charles Lindbergh signature and later provided a purchase order for the signature which resembles an Upper Deck invoice; Collectors's authenticity letter was issued prior to Upper Deck's alleged purchase of the signature; and Collectors's letter purported to authenticate a signature with a date whereas the Hair Cuts Signature card did not have a date. Fraudulent intent must often be inferred from underlying circumstances as direct evidence is rarely available. (*Continental Airlines, Inc. v. McDonnell Douglas Corp*. (1989) 216 Cal.App.3d 388, 411–412.) However, " ' "[w]hen opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork." [Citation.]' " (*Annod Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1298.) We cannot agree that fraudulent intent in this case may be inferred from the facts Sterpka presented. Sterpka's arguments are mere conjecture and do not permit a reasonable inference of fraudulent intent. Thus, Sterpka's fraud cause of action against Upper

6

Deck fails. Similarly, Sterpka's negligent misrepresentation claim fails because he has failed to show Upper Deck acted unreasonably.

Sterpka's fraud and negligent misrepresentation claims against Collectors also fail. Although Sterpka argues that genuine issues of material fact exist on these causes of action, Sterpka failed to show he relied on any statement by Collectors. Indeed, Sterpka admitted in his deposition that he did not rely on any statements or documents from anyone at Collectors in deciding whether to purchase the case of SP Legendary Cuts cards. Sterpka's claims against Collectors are largely based on Collectors's letter of authenticity to Upper Deck, the later letter finding the same signature was not authentic, and its failure to disclose to Sterpka that it had issued a letter of authenticity to Upper Deck. These facts, even if true, do not support the necessary element of reliance. Generally, reliance "exists when the misrepresentation . . . was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." (*Alliance Mortgage Co. v. Rothwell*, *supra*, 10 Cal.4th at p. 1239.) Sterpka has not met his burden to show a triable issue of fact regarding reliance because none of his arguments demonstrate that he purchased the case of SP Legendary Cuts cards based on Collectors's statements.

We conclude the trial court properly granted summary judgment in favor of Upper Deck and Collectors on the fraud and negligent misrepresentation claims.

### III. *Negligence Causes of Action*

Sterpka argues the trial court erred in granting summary judgment in favor of Upper Deck and Collectors on his negligence claims. Those claims were based on allegations that Upper Deck and Collectors failed to reasonably and properly authenticate the Charles Lindbergh signature.

The elements of a negligence action are duty, breach of duty, proximate cause and damages. (*Paz v. State of California* (2000) 22 Cal.4th 550, 559.) "'[N]egligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm.' [Citation.] Thus, as a general proposition one 'is required to exercise the care that a person of ordinary prudence would exercise under the circumstances.'" (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 997, fn. omitted.)

Here, before Upper Deck put the Charles Lindbergh Hair Cuts Signature card in the marketplace and sent it to Sterpka, Upper Deck authenticated the signature by sending it to Collectors. Upper Deck believed Collectors was one of the largest authenticators in the trading card industry. Based on Collectors's letter of authenticity, Upper Deck believed the Charles Lindbergh signature was authentic. Sterpka has not produced evidence demonstrating that Upper Deck's acts were unreasonable. Thus, his negligence claim against Upper Deck fails.

Similarly, Sterpka has not shown that Collectors failed to exercise the degree of care and diligence which would be exercised by persons of reasonable prudence under the same circumstances when it authenticated the signature. The evidence reveals an

8

ongoing dispute regarding the authenticity of the signature.  At least one authentication service other than Collectors found the signature was genuine.  Evidence that Collectors issued a second letter stating the signature was not authentic and that Clemons informed Sterpka the signature was a forgery is not sufficient to show Collectors was negligent.  These facts merely reveal a mistake and dispute regarding the signature's validity.  Without some evidence that Collectors acted unreasonably, Sterpka cannot prove negligence.

## IV.  *CLRA Causes of Action*

Sterpka argues the trial court erred in granting summary judgment because triable issues of material fact existed on his CLRA claims.  Upper Deck and Collectors contend Sterpka cannot maintain claims under the CLRA because he was not a "consumer" who purchased "goods" as defined by the CLRA.

"The Legislature enacted the CLRA in 1970 to provide individual consumers with a remedy against merchants employing certain deceptive practices in connection with the sale of goods or services, noting the difficult[y] consumers faced proving a fraud claim.  [Citation.]  The purpose of the statutory scheme is 'to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.'  [Citation.]  The Legislature intended the CLRA to be 'liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.'  [Citation.]  The CLRA

9

sets forth 24 proscribed 'unfair methods of competition and unfair or deceptive acts or practices.'"  (*Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983, 1021.)

Under the CLRA, "'[c]onsumer' means an individual who seeks or acquires, by purchase or lease, any goods or services for *personal, family, or household purposes.*" (Civ. Code, § 1761, subd. (d), italics added.)  Similarly, "'[g]oods' means tangible chattels bought or leased for use primarily for *personal, family, or household purposes*, including certificates or coupons exchangeable for these goods . . . ."  (*Id.*, subd. (a), italics added.)

Here, Sterpka purchased a case of the SP Legendary Cuts cards in hopes of obtaining one of the rare Hair Cuts Signature cards.  He considered the cards to be valuable and intended to sell the Hair Cuts Signature card if he obtained one.  Shortly after receiving the Charles Lindbergh card, Sterpka contacted Beckett to sell the card through Beckett Select Auctions.  Sterpka also sold approximately two dozen other cards from his case of SP Legendary Cuts cards.

Sterpka does not cite to any evidence disputing that he intended to sell the Hair Cuts Signature card for a profit if he obtained one.  Instead, he claims he is a "consumer" for purposes of the CLRA because "he was not (nor has he even been) in the business of buying and selling memorabilia" and "[c]ard collecting is [his] hobby." While Sterpka's claims may be true, they do not change the fact that in this case, he did not intend to obtain the Hair Cuts Signature card for "personal, family, or household" purposes.  (Civ. Code, § 1761, subd. (d).)  Instead, his intent was to obtain the card for

resale.  Thus, the trial court properly granted summary judgment, finding Sterpka was not a "consumer" under the CLRA.

## DISPOSITION

The judgment is affirmed.  Upper Deck and Collectors are entitled to their costs on appeal.


McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

McDONALD, J.

11